McConnell *et al. v.* The Citizens' State Bank of Petersburgh.

No. 15,957.

McConnell et al. *v.* The Citizens' State Bank of Petersburgh.

Deed.—*Consideration.—Recital in as Evidence of.*—A recital in a deed of the amount of the consideration is *prima facie* evidence of the payment of such consideration.

Fraudulent Conveyance.—*Proof of Insufficiency of Debtor's Property to Pay His Debts.*—When a creditor of a grantor attacks his conveyance on the ground that it was fraudulent, he must aver and prove that when the conveyance was made, as well as when suit was brought, the debtor did not have enough property subject to execution to pay all his debts.

Same.—*Creditor Holding Mortgage Securing His Debt.—Security Insufficient.— Foreclosure Before Suit Brought to Set Aside Conveyance.*—A creditor holding a mortgage securing his debt on property insufficient to satisfy such debt is not bound to foreclose and sell such property before bringing his action to set aside his debtor's fraudulent conveyance. *Law* v. *Smith,* 4 Ind. 56, and *Baugh* v. *Boles,* 35 Ind. 524, criticised.

From the Gibson Circuit Court.

*L. C. Embree,* for appellants.

*J. H. Miller* and *F. B. Posey,* for appellee.

McBride, J.—This was a suit by a creditor to set aside as fraudulent a conveyance of land by his debtor. On the 19th day of January, 1889, James H. McConnell and Elisha E. Bell executed to appellee their note for $3,000, borrowed money. At that time McConnell owned the land in controversy, with other lands. On the 31st day of January, 1889, he, with his wife, Lotta McConnell, conveyed the land in controversy to the appellants, who on the same day conveyed the undivided one-half of the same to said Lotta for the term of her natural life. Appellant William T. McConnell is a son of said James H., and appellee claims that the conveyance to him and his wife by James H. and Lotta was voluntary and without consideration, and left the debtor without sufficient property remaining for the payment of his debts.

The appellants present and argue several propositions. The conclusion we have reached, however, after a careful exam-

ination of the evidence, renders it unnecessary for us to examine or pass upon more than two of these questions.    The allegations of the paragraph of the complaint upon which the finding is based are sufficient.

The facts, as developed by the evidence, are substantially as follows, in so far as they bear on the question of consideration for said conveyance :

July 16th, 1861, the debtor, James H. McConnell, was a widower, with two children, both infants.    One was the appellant William T., and the other was a daughter, named Isadora.    He owned a tract of land in Gibson county, known in this litigation as the Barton township farm.    This farm he conveyed to said children on that day.    Afterward the daughter died intestate, leaving as her sole heirs her father and brother.    February 26th, 1883, the appellant, having come of full age, conveyed the land to his father.    He testifies that this was done because he had become dissatisfied with the Barton township land, and wanted instead the land now in controversy, which at that time was an undivided interest, in what was known as the Hargrove farm, and that it was then agreed between him and his father that he should deed the Barton farm back to the father, who should, in exchange therefor, convey to him the Hargrove farm as soon as he had cleared it of a mortgage then on it for purchase-money ; and that if it was not cleared of said mortgage the Barton township land was to be reconveyed to him.

He further testifies that at the time he executed said deed to his father, the father gave him a note for $3,000, due one day after date, with eight per cent. interest, but that by their agreement the note was to be fully paid by the conveyance of land under said agreement, and not in money.    This note, he testifies, was destroyed by a fire which destroyed his residence and all his papers, and was never renewed.

He further testifies that the deed of January 31st, 1889, was made in execution of the agreement thus existing between him and his father, and that, instead of being without

consideration, the father was compensated by the previous conveyance of the Barton township land. In all this he is fully corroborated by his father and his step-mother, Lotta McConnell.

They also all testify to the following additional facts: That on the day of the making of said deeds,—January 31st, 1889,—said James H. McConnell, being about to borrow of one John Sipp $4,250, wished to execute to him a mortgage on the Barton township land to secure it, but that his wife refused to join in the mortgage until it was agreed that said deeds should be made, whereby she was to and did receive a life-estate in the undivided one-half of the Hargrove farm, while the fee to the whole was conveyed to appellants.

No witnesses were called to contradict these witnesses, nor was any testimony of any kind offered tending to contradict them. Appellee's counsel say, however, " The court evidently found that the Barton township land had been deeded by the father to the son when he was a minor, and without any consideration, and that when the son became of age he deeded the land back to the father without any consideration, and we feel very confident that the court, under the evidence of the son, William T. McConnell, was justified in coming to that conclusion."

Counsel, while admitting that William T. testified to the foregoing facts, cited several circumstances, also disclosed by his testimony, which they argue are inconsistent with the claim that the deed was executed upon the valuable consideration claimed, and insist that by reason of these inconsistencies and discrepancies the court was fully warranted in reaching the conclusion that the deed was without consideration and fraudulent.

It has long been the unvarying rule of this court not to disturb the finding of a court or the verdict of a jury where there is evidence tending to support it on all material questions involved. This has been so many times decided that

it is unnecessary to cite authority. Where there is no evidence to support a finding or a verdict on any material point, it has also been the unvarying practice of this court to set such finding or verdict aside. *City of Warsaw* v. *Dunlap,* 112 Ind. 576 ; *Hutchinson* v. *Trauerman,* 112 Ind. 21 ; *Roby* v. *Pipher,* 109 Ind. 345 ; *Moellering* v. *Kayser,* 110 Ind. 533 ; *Kitch* v. *Schoenell,* 80 Ind. 74 ; *Stough* v. *Smith,* 50 Ind. 250 ; *Bradford* v. *Bradford,* 59 Ind. 434 ; *Jeffersonville, etc., R. R. Co.* v. *Bowen,* 49 Ind. 154.

In this case, the appellee, being the plaintiff below, sought to set the conveyance in question aside, on the ground that it was voluntary and without consideration. The allegation of the complaint, relating to consideration, was, that the conveyance was made " for a colorable consideration of $3,500, but for no real consideration whatever."

This allegation was material, and its establishment by proof was essential to entitle appellee to a recovery. The burthen was on appellee to establish as a fact, and by evidence, that the deed was made without consideration. This counsel argue was done, because they say that while the witnesses testified to a valuable consideration, they testified to certain other facts, from which inferences may, and they think should, be drawn inconsistent with and contradicting their claim of the existence of such consideration.

Appellants insist that no inferences that can be fairly drawn from the testimony are inconsistent with their claim, but, assuming that they are, how will this affect the case? Suppose the testimony of the three witnesses is self-contradictory, as insisted by counsel, and to such extent that no reliance can be placed on it,—and this, we think, after a careful reading,—is the utmost that could be claimed for it, the effect of this would be to eliminate it from the record. If it could not be believed, it should be disregarded. Would this prove there was no consideration for the deed ? The deed was in evidence, and contains a recital that it was executed in consideration of the sum of $3,500. This is at

least *prima facie* evidence of the payment of a valuable consideration, and of the amount of such consideration. 1 Greenleaf Ev., section 26, note 1, and cases there cited; Lawson Presumptive Ev. 84; *Stall* v. *Fulton,* 30 N. J. L. 430; *Nutting* v. *Herbert,* 37 N. H. 346; *Clements* v. *Landrum,* 26 Ga. 401.

We think the circumstances tend strongly to corroborate rather than to impeach these witnesses, especially the following facts, which are undisputed:

The Barton township land was in fact conveyed to appellant William T. in 1861, and held by him to 1883, more than twenty-one years. After the death of his sister he was owner of the undivided three-fourths of it. This farm, as shown by the evidence, contained one hundred and twenty acres, and was worth $4,500 to $5,000. Although the deed to him was sustained only by the consideration of love and affection, that consideration was good, and his title in 1883 was presumably unimpeachable. While it is not unusual for parents to give lands to their children, it is unusual to find children giving lands to their parents. Yet to sustain appellee's contention, we must assume that when appellant conveyed this land to his father in 1883 he did the unusual thing of making his father a gift of it, and that the three witnesses who testify that he was to be compensated for it, and that the deed now assailed was the promised compensation, testified falsely.

After a careful scrutiny of the testimony we fail to find any evidence to support the allegation that the deed was without consideration, and for that reason the judgment must be reversed.

This is not a case where there is a conflict of evidence, but is a case where there is no evidence whatever to sustain a material averment in the complaint.

May 24th, 1889, James H. McConnell, the debtor, with his wife, executed to appellee a mortgage on certain land to secure the payment of the debt here involved. No effort has

been made to foreclose this mortgage. It, however, appears by the evidence, that, even if said mortgage was foreclosed by appellee, it would be inadequate to satisfy its debt. There is also evidence tending to show that all of said debtor's property together, which can be reached by ordinary process, is inadequate for the satisfaction of the debt.

Appellants insist, however, that before the appellee can maintain this action he must first foreclose said mortgage and exhaust all the debtor's remaining property. In this contention they are wrong. It was necessary for the appellee to aver and prove that when the conveyance was made, as well as when the suit was brought, the debtor did not have enough other property subject to execution to pay all his debts. Proof that he had at these times some property subject to execution, but not enough to pay all his debts, and especially as in this case not enough to pay the plaintiff's debt, will not defeat the action. *Lee* v. *Lee,* 77 Ind. 251, and cases there cited.

To require parties to first exhaust all the debtor's remaining property in such a case before pursuing the property fraudulently conveyed would frequently defeat justice, and aid in the consummation of the fraud by enabling the parties to effectually place the property beyond reach pending the necessary delay thus occasioned. If the proof in such case failed to show that the remaining property was insufficient to discharge all the debtor's liabilities, the plaintiff could not succeed. The fact that the party has a mortgage on property sufficient to secure only a part of the debt will make no difference.

In so far as expressions used in the cases of *Law* v. *Smith,* 4 Ind. 56, *Baugh* v. *Boles,* 35 Ind. 524, and other cases following, may seem to indicate a rule differing from that laid down in *Lee* v. *Lee, supra,* they are disapproved.

We think, however, from an examination of these cases the court did not intend to assert more than that the party attacking such conveyance must show, as we here hold, that

after exhausting all the debtor's property it will still be insufficient to pay all his debts. Assuming this to be the meaning of the language used, there is no conflict in the cases.

Other questions presented by the record may not arise on another trial, and we will not consider them.

Judgment reversed, with instructions to the circuit court to grant a new trial.

Filed May 12, 1891; petition for a rehearing overruled Jan. 6, 1892.